Glenn D. Bellamy (Ohio Bar No. 0070321)
WOOD HERRON & EVANS LLP
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
## PHOENIX DIVISION

| | | |
|---|---|---|
| **ABC IP, LLC, a Delaware limited liability company,** | ) ) ) | CASE NO. _____ |
| **RARE BREED TRIGGERS, INC., a Texas corporation,** | ) ) ) | **COMPLAINT FOR PATENT INFRINGEMENT** |
| **and** | ) ) | |
| **RBTM LLC, a Wyoming limited liability company** | ) ) | **JURY TRIAL DEMANDED** |
| **Plaintiffs.** | ) ) ) | |
| **v.** | ) ) | |
| **Jeremy David Winland, an individual, d/b/a Arizona Regulator** | ) ) ) | |
| **Defendant.** | ) ) | |

This is an action for patent infringement in which ABC IP LLC ("ABC"), Rare Breed Triggers, Inc. ("Rare Breed"), and RBTM LLC ("RBTM") (collectively, "Plaintiffs") accuse Jeremy David Winland d/b/a Arizona Regulator ("Defendant") of infringing U.S. Patent Nos. 12,038,247, 12,031,784, 12,578,159, and 12,636,403; infringing Plaintiffs' trademark rights; and engaging in unfair competition as follows:

1

## PARTIES

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3.      RBTM is a limited liability company organized under the laws of the State of Wyoming with an address at 1309 Coffeen Avenue, STE 1200, Sheridan, Wyoming 82801.

4.      Upon information and belief, Jeremy David Winland is an individual doing business as Arizona Regulator with an address of 40406 N. Shetland Drive, San Tan Valley, AZ 85140.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)–(c), 281, and 284–85; trademark infringement; false designation of origin; and unfair competition under 15 U.S.C.  §§ 1114 and 1125(a).

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

7.      Personal jurisdiction over Defendant is proper in this District because the Defendant resides in and has a regular and established place of business in this District.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendant resides in or has committed acts of infringement and has a regular and established place of business in this District.

**BACKGROUND**

9.      This lawsuit asserts (i) direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent"), 12,578,159 ("the '159 Patent"), and 12,636,403 ("the '403 Patent) (together, "the Asserted Patents"); and (ii) trademark infringement, false designation of origin, and unfair competition with regard to Plaintiffs' well-known FRT trademark.

10.     The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit A.

11.     The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable. A true and correct copy of the '784 Patent is attached as Exhibit B.

12.     The '159 Patent was lawfully and properly issued by the United States Patent and Trademark Office on March 17, 2026. Each and every claim of the '159 Patent is valid and enforceable. A true and correct copy of the '159 Patent is attached as Exhibit C.

13.     The '403 Patent was lawfully and properly issued by the United States Patent and Trademark Office on May 26. 2026. Each and every claim of the '403 Patent is valid and enforceable. A true and correct copy of the '403 Patent is attached as Exhibit D.

14.     ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

15.     RBTM is the owner of the trademark FRT ® and variations thereof. Since at least 2020, the FRT ® mark has been used by Plaintiff Rare Breed to identify a unique trigger for firearms, which has been a remarkably successful offering. As a result of the long-term and high-

3

profile use, the FRT ® trademark has come to be uniquely identified with Rare Breed and a valuable identifier of Rare Breed's products. In addition to strong common law rights in the FRT ® trademark, RBTM also owns the following federally registered trademarks and pending applications, including the right to enforce the marks against infringers:

| Mark | Goods | App. No. | Reg. No. | App. Date | Reg. Date |
|---|---|---|---|---|---|
| FRT | triggers for firearms | 97248519 | 8187914 | 2022-02-01 | 2026-03-24 |
| FRT-15 | triggers for firearms | 97245949 | 7004418 | 2022-01-31 | 2023-03-21 |
| FRT-22 | triggers for firearms | 97248530 | 8232406 | 2022-02-01 | 2026-04-28 |
| FRT-47 | triggers for firearms | 97248528 | 8232405 | 2022-02-01 | 2026-04-28 |
| FRT-MR3 | triggers for firearms | 99714625 | | 2026-03-20 | |
| FRT-RD3 | triggers for firearms | 99714703 | | 2026-03-20 | |
| FRT-15L3 | triggers for firearms | 98715335 | 8225451 | 2024-08-24 | 2026-04-21 |

Together, Plaintiffs' common law rights in and federal trademark registrations and pending applications are referred to as the "FRT Marks."

16. Rare Breed is the exclusive licensee of the Asserted Patents and the FRT Marks.

17. Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

18. Upon information and belief, Defendant has committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

## THE INVENTIONS

19. A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced

4

by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

20.    In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

21.    In contrast, in what Plaintiffs have coined a "forced reset" trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be mechanically moved to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

22.     The '247 and '159 Patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a "forced reset" semiautomatic mode and uses a cam, rotated by cycling of the action, to cause the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

23.     The '784 Patent provides a device that works in a trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs, in some embodiments, a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 Patent overcome the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

24.     The '403 Patent describes and claims a similarly operating device with the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) "forced reset" semiautomatic mode.

25.     The claims of the patents define the scope of the patented inventions.

<u>**THE INFRINGING DEVICE**</u>

26.     On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale products that embody the technology claimed in the Asserted Patents, including an Arizona Regulator ("the Arizona Regulator"), which embodies the technology claimed in at least the '247, '784, '159, and '403 Patents.

6

27.    On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale the Arizona Regulator via the website https://arizonaregulator.com/, in multiple variants, including at least:

a.  As a standalone product; and/or

b.  Pre-installed in a receiver and/or complete firearm.

28.    Exemplary images are shown below:





## AZR-15M2 2 Position Drop In FRT

ARIZONA REGULATOR ®

IN STOCK $238.00

**Minimum Purchase:**
1 unit

**Maximum Purchase:**
2 units

Quantity:
1

Add to Cart



## AZR-15M2-MBT 2 Position Drop In FRT

ARIZONA REGULATOR ®

IN STOCK $238.00

**Minimum Purchase:**
1 unit

**Maximum Purchase:**
2 units

Quantity:
1

Add to Cart

29.    The Arizona Regulator can operate in at least a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between standard semiautomatic with disconnector and "forced reset" semiautomatic with cam modes by rotating the safety selector between positions.

## INFRINGEMENT OF THE FRT MARKS

30.    On information and belief, Defendant is distributing, advertising, and/or selling products that do not originate with Plaintiffs but that nonetheless bear or are promoted in association with the FRT Marks.

31.    Defendant is falsely associating its products with Plaintiffs' well-known FRT Marks.

32.    Defendant is advertising its products as "FRT" as shown at: https://arizonaregulator.com/search.php?search_query=FRT. Exemplary highlighted images are shown below:

9



ARIZONA REGULATOR ®
### AZR-15M2 2 Position Drop In FRT
Qty 1 - ARIZONA REGULATOR ® AZR-15M2 FRT Trigger Device Direct Drive 2 Position Qty III (3) - Standard Mil-Spec Disconnectors / Use if needed some disconnectors are not to correct Spec. ...

IN STOCK $238.00

Add to Cart

ARIZONA REGULATOR ®
### AZR-15M2-MBT 2 Position Drop In FRT
Qty 1 - ARIZONA REGULATOR® AZR-15M2-MBT FRT Trigger Device Direct Drive 2 Position FOR 3 POSITION ARIZONA REGULATOR® SEE AZR-15A1 3 POSITION   This is the version of our famous...

IN STOCK $238.00

Add to Cart

ARIZONA REGULATOR ®
### Premium Function Drop In FRT 3 Position AZR-15A1 ARIZONA REGULATOR ®
Premium Function 3 Position FRT Qty 1  -  AZR-15A1  ARIZONA REGULATOR ® 3 Position FRT Trigger System  / Complete ARIZONA REGULATOR ® System AZR unit AZR FCG and Std...

IN STOCK $288.00

Add to Cart

10



33.    Despite what Defendant's marketing implies, Defendant's products are **not** one of Plaintiffs' FRT products.

34.    Defendant's unauthorized use of the FRT Marks to identify and promote its products is likely to mislead consumers into falsely believing that Defendant's products are in fact Plaintiffs' products, or are endorsed by or associated with Plaintiffs.

35.    The only reason Defendant would use the FRT Marks in connection with its products is to trade on the goodwill Plaintiffs have developed in the FRT Marks, and thus Defendant's conduct is willful.

## COUNT I – INFRINGEMENT OF THE '247 PATENT

36.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

37.     In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 Patent. Such unlicensed products include the Arizona Regulator.

38.     On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents.

39.     An exemplary comparison of the Arizona Regulator, when assembled and used as intended, with claim 15 of the '247 Patent, is illustrated in the chart below:

| '247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Arizona Regulator is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation.<br><br>https://arizonaregulator.com<br>**Arizona Regulator** |

| '247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Arizona Regulator (Green, Blue, Magenta, and Yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (Red) that has a sear catch and a hook for engaging a disconnector (Orange).<br><br><br><br>(Plaintiff-generated renderings of Arizona Regulator here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (Red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.<br><br><br><br>**Hammer Set Position** |

13

| '247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| | **Hammer Released Position** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Arizona Regulator (Green, Blue, Magenta, and Yellow) is installed with a trigger member (Brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions.  The trigger member (Brown) has a sear. |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are in engagement when the hammer and trigger member are in their set positions. |

14

| '247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| | **Trigger Member Set Position** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are out of engagement in the released position. **Trigger Member Released Position** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (Orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (Red). |

15

| '247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| | **Disconnector Hook Engaged** |
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Arizona Regulator has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket.  (*See* Image above depicting Arizona Regulator, shown in green, blue, magenta, and yellow in fire control mechanism pocket)<br>**Arizona Regulator Cam with Lobe and Lever** |
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger | The cam is movable between a first position and a second position. |

16

| '247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| member towards said set position, | **Cam and Lobe First Position**<br><br>In the second position, the cam lobe forces the trigger member (Brown) toward the set position when the cam is in the forced reset semi-automatic mode.<br><br>**Cam and Lobe Second Position** |
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode, |

| '247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| said cam is in said first position, | . . . the cam is in the first position during at least part of the cycle. |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook catches the hammer hook. |

18

| '247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| | <br><br>**Disconnector Hook Catches Hammer** |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,<br><br> |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | . . . at which time a user must manually release the trigger member (Brown) to free said hammer (Red) from the disconnector (Orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |

19

| '247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| | |
| whereupon in a forced reset semi-automatic mode, | When in the forced reset semi-automatic mode, |
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | . . . the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook is prevented from catching the hammer hook. |

20

| '247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| | |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |
| at which time the user can pull said trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (Brown) to fire the firearm. |

21

| '247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| |  |

40.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '247 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Arizona Regulator. One example of this is the instructional material found on Defendant's website (https://youtu.be/PcR49EBMUXk?si=8xAtZPbH50Vd9cE1) that informs customers to install the Infringing device into an AR15:

22



41.     On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 15 of the '247 Patent.

42.     On information and belief, Defendant also contributes to the infringement of the '247 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Arizona Regulator, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '247 Patent.

43.     Defendant has engaged in egregious infringement behavior with knowledge of the '247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '247 Patent and that the '247 Patent is valid at least through the

23

service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '247 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '247 Patent.

44.    By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the '247 Patent pursuant to 35 U.S.C. § 271.

45.    By its actions, Defendant's infringement of the '247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

46.    By its actions, Defendant's infringement of the '247 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

47.    Defendant's infringement of the '247 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

48.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

49.    Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## **COUNT II – INFRINGEMENT OF THE '784 PATENT**

50.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

51.     In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '784 patent. Such unlicensed products include the Arizona Regulator.

52.     On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

53.     An exemplary comparison of the Arizona Regulator, when assembled and used as intended, with claim 1 of the '784 Patent, is illustrated in the chart below:

| '784 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
| --- | --- |
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Arizona Regulator is part of a forced reset trigger mechanism and functions as an extended trigger member locking device.<br><br><br>https://arizonaregulator.com<br>**Arizona Regulator** |

| '784 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| | **Arizona Regulator Installed** (Plaintiff-generated renderings of Arizona Regulator here and below; Housing and bolt carrier shown here and below in section view for clarity) |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Arizona Regulator has a locking member **(Blue)** which has a first position in which the trigger member is locked against pulling movement. **Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The locking member **(Blue)** is moveable from the first position to a second position where it does not restrict movement of the trigger member. |

26

| '784 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| |  **Unlocked Second Position** |
| the locking member configured to be movably supported by a frame | The locking member **(Blue)** is movably (pivotally about the axis depicted below) supported by a frame **(Magenta)**. |

27

| '784 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| | |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The locking member has an upward extending portion **(Green)** configured to make actuating contact with a surface of the bolt carrier **(Gray)**. **Actuating Contact When Bolt Carrier Cycles Rearward** |

| '784 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| |  **Actuating Contact When Bolt Carrier Cycles Forward** |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact with the extension portion **(Green)** causes the locking member **(Blue)** to move from the first position to the second position.<br><br>**Locked First Position** |

| '784 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| | **Unlocked Second Position** |
| the locking member having a body portion that is movably supported | The locking member has a body portion **(Blue)** that is movably supported by a housing **(Magenta).** |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position and a deflected position. | The upwardly extending deflectable lever arm is designed to allow separate movement of the lever arm relative to the body portion **(Blue)** between one position (depicted in green) where it is extended and another position where it is deflected (depicted in red). This independent movement occurs at the beginning of the deflectable portion (lever arm) movement as it makes actuating contact with the bolt carrier both as the bolt carrier moves rearward . . . |

30

| '784 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| | **Deflection of Upwardly Extending Deflectable Portion Separately From Body Portion as Bolt Carrier Moves Rearward**<br><br>. . . and as the bolt carrier moves forward.<br><br>**Deflection of Upwardly Extending Deflectable Portion Separately From Body Portion as Bolt Carrier Moves Forward** |

54.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '784 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Arizona Regulator while selling products. One example of this is the instructional material found on Defendant's website (https://youtu.be/PcR49EBMUXk?si=8xAtZPbH50Vd9cE1) that informs customers to install the Infringing device into an AR15:



55.     On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the '784 Patent.

56.     On information and belief, Defendant also contributes to the infringement of the '784 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by

Defendant of the components of the Arizona Regulator, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '784 Patent.

57.     Defendant has engaged in egregious infringement behavior with knowledge of the '784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant knowns or should have known that its actions constituted and continue to constitute infringement of the '784 Patent and that the '784 Patent is valid at least through the service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '784 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '784 Patent.

58.     By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the '784 Patent pursuant to 35 U.S.C. § 271.

59.     By its actions, Defendant's infringement of the '784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

60.     By its actions, Defendant's infringement of the '784 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

61.     Defendant's infringement of the '784 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

62.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

63.    Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT III — INFRINGEMENT OF THE '159 PATENT

64.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

65.    In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '159 patent. Such unlicensed products include the Arizona Regulator.

66.    On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

67.    An exemplary comparison of the Arizona Regulator, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart below:

| '159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt | When installed and used as directed, the Arizona Regulator is part of a forced reset trigger mechanism that uses a bolt means. With the Arizona Regulator installed, the trigger mechanism operates in a standard semi-automatic mode and a forced reset semi-automatic mode |

| '159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | <br>**Arizona Regulator** |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Arizona Regulator (**Green, Blue, Magenta and Yellow**) is installed in a fire control mechanism pocket of a receiver along with a hammer (**Red**) that has a sear surface and a hook for engaging a disconnector (**Orange**).<br><br>(Plaintiff-generated renderings of Arizona Regulator here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward | The hammer (**Red**) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means. |

35

| '159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| movement of a bolt means, | **Hammer Set Position** **Hammer Released Position** |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>between set and | The Arizona Regulator **(Green, Blue, Magenta, and Yellow)** is installed with a trigger member **(Brown)** in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface. |

| '159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| released positions, | **Trigger Member Set Position** **Trigger Member Released Position** |
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member **(Brown)** and sear surface of the hammer **(Red)** are in engagement when the hammer and trigger member are in their set positions. |

| '159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| | **Trigger Member and Hammer Member Set Position** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member (**Brown**) and sear catch surface of the hammer (**Red**) are out of engagement in the released position.<br><br>**Trigger Member and Hammer Member Released Positions** |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a | The disconnector (**Orange**) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (**Red**). |

38

| '159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| transverse disconnector pivot axis, and | <br><br>**Disconnector Hook Engaged** |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Arizona Regulator has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket.  (*See* Image above depicting Arizona Regulator, shown in green, blue, and magenta, in fire control mechanism pocket) |

| '159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| | **Arizona Regulator Cam with Lobe and Lever** |
| the cam being movable between a first position and a second position, | The cam is movable between a first position and a second position. **Cam and Lobe First Position** |
| in the second position the cam lobe forces the trigger member toward the set position, | In the second position, the cam lobe forces the trigger member (**Brown**) toward the set position when the cam is in the forced reset semi-automatic mode. |

| '159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| | **Cam and Lobe Second Position** |
| whereupon in the first mode, | While in the first (standard semi-automatic) mode, |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, | Rearward movement of the bolt means causes rearward pivoting of the hammer **(Red)** such that the disconnector **(Orange)** hook catches the hammer hook. |

41

| '159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| |  **Disconnector Hook Catches the Hammer** |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery, **Pressure on Trigger Member Prevents Reset** |
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger | at which time a user must manually reduce pressure on the trigger member (**Brown**) to free the hammer (**Red**) from the disconnector (**Orange**) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |

| '159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | <br><br>**Reduced Pressure on Trigger Member Allows Reset** |
| whereupon in a second mode, | When in the second (forced reset semi-automatic) mode,<br><br> |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | . . . rearward movement of the bolt means causes rearward pivoting of the hammer **(Red)** and the cam to force the trigger member toward the reset position such that the disconnector **(Orange)** hook is prevented from holding the hammer hook. |

43

| '159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| |  |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position, |
| at which time the user can pull the trigger member to fire the firearm. | at which time the user can pull the trigger member (**Brown**) to fire the firearm without having to first release pressure on the trigger member. |

| '159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
|  |  |

68.    On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '159 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Arizona Regulator while selling products. One example of this is the instructional material found on Defendant's website (https://youtu.be/PcR49EBMUXk?si=8xAtZPbH50Vd9cE1) that informs customers to install the Infringing device into an AR15:



69.    On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the '159 Patent.

70.    On information and belief, Defendant also contributes to the infringement of the '159 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Arizona Regulator, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '159 Patent.

71.    Defendant has engaged in egregious infringement behavior with knowledge of the '159 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '159 Patent and that the '159 Patent is valid at least through the

46

service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '159 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '159 Patent.

72.    By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '159 Patent pursuant to 35 U.S.C. § 271.

73.    By its actions, Defendant's infringement of the '159 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

74.    By its actions, Defendant's infringement of the '159 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

75.    Defendant's infringement of the '159 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

76.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

77.    Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT IV — INFRINGEMENT OF THE '403 PATENT

78.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

47

79. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '403 patent, including but not limited to claims 38 and 54, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '403 patent. Such unlicensed products include the Infringing device.

80. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '403 patent, including but not limited to claims 38 and 54, literally and/or under the doctrine of equivalents.

81. An exemplary comparison of the Arizona Regulator, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart below:

| '403 Patent, Claim 38 | Arizona Regulator |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Arizona Regulator is part of a forced reset trigger mechanism.<br><br><br><br>**Arizona Regulator** |
| a hammer having a hammer hook and adapted to pivot | The Arizona Regulator (Green, Blue, Magenta, and Yellow) is installed in a fire control mechanism pocket along with a |

| '403 Patent, Claim 38 | Arizona Regulator |
|---|---|
| on a transverse hammer pivot axis; | hammer (red) that has a hammer hook and is adapted to pivot on a transverse hammer pivot axis.<br><br>**Arizona Regulator** (**Installed**)<br><br>(Plaintiff-generated renderings of Arizona Regulator here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis;<br><br>a trigger member; and | The Arizona Regulator is installed along with a disconnector (orange) which has a disconnector hook and is adapted to pivot on a transverse disconnector pivot axis, and a trigger member (brown).<br><br>**Disconnector and Trigger Member** |
| a safety selector adapted to be movable between a | The Arizona Regulator interacts with a safety selector adapted to be movable between a standard semi-automatic position, |

49

| '403 Patent, Claim 38 | Arizona Regulator |
|---|---|
| standard semi-automatic position | <br>**Arizona Regulator** (**installed**) **in Standard Semi-Automatic Position** |
| and a forced reset semi-automatic position, | . . . and a forced reset semi-automatic position,<br><br>**Arizona Regulator** (**installed**) **in Forced Reset Semi-Automatic Position** |

| '403 Patent, Claim 38 | Arizona Regulator |
|---|---|
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (brown) is rearwardly actuated. |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (red) pivots rearward to a position where the hammer hook is past the disconnector hook (orange). |
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (brown) must be reduced to permit the trigger member to then be actuated to fire a firearm. |

51

| '403 Patent, Claim 38 | Arizona Regulator |
|---|---|
| |  |

82.    An exemplary comparison of the Arizona Regulator, when assembled and used as intended, with claim 54 of the '403 Patent is illustrated in the chart below:

| '403 Patent, Claim 54 | Arizona Regulator |
|---|---|
| 54. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Arizona Regulator is part of a forced reset trigger mechanism.<br><br>**Arizona Regulator** |
| a trigger member configured to pivot about a transverse axis; | The Arizona Regulator is installed in a fire control mechanism pocket along with a trigger member that is configured to pivot about a transverse axis. |

| '403 Patent, Claim 54 | Arizona Regulator |
|---|---|
| | **Arizona Regulator** (**Installed**)<br><br>(Plaintiff-generated renderings of Arizona Regulator above and below) |
| a hammer | The Arizona Regulator (Green, Blue, Magenta, and Yellow) is installed in a fire control mechanism pocket along with a hammer (red) in image above. |
| a disconnector operatively associated with the trigger member and the hammer; | The Arizona Regulator is installed along with a disconnector (orange) which is operatively associated with the hammer (Red) and trigger (Brown). |

53

| '403 Patent, Claim 54 | Arizona Regulator |
|---|---|
| | **Disconnector, Trigger Member, and Hammer** |
| a locking member operatively associated with the trigger member; | The Arizona Regulator uses the cam ( Green) as a locking member and it is operatively associated with the trigger member. |
| Wherein cycling of the action causes the trigger member to be forcibly returned to a set position in at least one operating mode; and | When using a Arizona Regulator, the cycling of the action causes the trigger member to be forcibly returned to the set position in at least one operating mode. |

| '403 Patent, Claim 54 | Arizona Regulator |
|---|---|
| |  |

| '403 Patent, Claim 54 | Arizona Regulator |
|---|---|
|  | |
| wherein the trigger mechanism includes a selector inter-face structured to cooperate with a selector having at least two discrete selectable positions including:<br><br>(i) a standard semi-automatic position; and | The Arizona Regulator interacts with a safety selector adapted to be movable between a standard semi-automatic position, |

| '403 Patent, Claim 54 | Arizona Regulator |
|---|---|
| (ii) a forced reset semi-automatic position, |  **Arizona Regulator** (installed) **in Standard Semi-Automatic Position**<br><br>. . . and a forced reset semi-automatic position,<br><br>**Arizona Regulator** (installed) **in Forced Reset Semi-Automatic Position** |
| Such that rotation of the selector to the forced reset | When the safety selector is in the forced reset position the forced reset operating mode is enabled. |

| '403 Patent, Claim 54 | Arizona Regulator |
| --- | --- |
| position enables said forced reset operating mode. |  |

83.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '403 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing device while selling products. One example of this is the instructional  material found on Defendant's website (https://youtu.be/PcR49EBMUXk?si=8xAtZPbH50Vd9cE1) that informs customers to install the Infringing device into an AR15:



84.     On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claims 38 and 54 of the '403 Patent.

85.     On information and belief, Defendant also contributes to the infringement of the '403 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Infringing device, such as the cam or cam lever arm or the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '403 Patent.

86.     Defendant has engaged in egregious infringement behavior with knowledge of the '403 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '403 Patent and that the '403 Patent is valid at least through the

59

service of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '403 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '403 Patent.

87.    By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '403 Patent pursuant to 35 U.S.C. § 271.

88.    By its actions, Defendant's infringement of the '403 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

89.    By its actions, Defendant's infringement of the '403 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

90.    Defendant's infringement of the '403 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

91.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

92.    Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT V — FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114(1)

93.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

94.     As described above, Plaintiff RBTM is the owner and Plaintiff Rare Breed is the exclusive licensee of the FRT Marks in connection with firearm triggers.

95.     The federal trademark registrations for the FRT Marks as detailed above are in full force and effect. Plaintiff RBTM owns all right, title, and interest in and to these federal trademark registrations.

96.     The FRT Marks are inherently distinctive and have acquired significant goodwill in the marketplace through Plaintiffs' continuous and substantially exclusive use of those marks in commerce. As a result of their widespread and continuous use, the FRT Marks have become uniquely associated in the minds of consumers and the trade with Plaintiffs.

97.     The reputation Plaintiffs have built in the FRT Marks is of great value to Plaintiffs.

98.     Plaintiffs' use of and rights in the FRT Marks predate any use by Defendant of FRT.

99.     Defendant is wrongfully using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

100.    For example, see the highlighted images shown below from Defendant's website at https://arizonaregulator.com/.

61







101.    Defendant's use of the FRT Marks was and is without Plaintiffs' consent. Such unauthorized use by Defendant is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendant's products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

62

102. Defendant's unlawful acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

103. Plaintiffs are entitled to injunctive relief prohibiting Defendant from using the FRT Marks and any mark confusingly similar to the FRT Marks.

104. Upon information and belief, Defendant has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT Marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

### COUNT VI — FALSE DESIGNATION OF ORIGIN
### 15 U.S.C. § 1125(A)

105. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

106. As described above, Plaintiff RBTM owns and Plaintiff Rare Breed is the exclusive licensee of the distinctive FRT Marks in connection with firearm triggers through their continuous and substantially exclusive use of the FRT Marks since at least as early as 2020, which is well before any use of FRT by Defendant.

107. Plaintiffs' common law rights in the FRT Marks predate Defendant's infringing use of FRT and any other confusingly similar name or mark comprised of or containing FRT.

108. Defendant is using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

109. Defendant's actions described above constitute use of a false designation of origin that wrongfully and falsely designates the origin of Defendant's goods and services and is likely to cause confusion or mistake and/or to deceive as to affiliation, connection, or association or as

to the origin, sponsorship, or approval of Defendant's goods by Plaintiffs. These actions constitute a false designation of origin in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

110. Defendant's unlawful acts, which were committed and continue to be committed with full knowledge of Plaintiffs' prior rights in the FRT Marks, are knowing, willful, and done in bad faith.

111. Defendant's acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

112. Plaintiffs are entitled to injunctive relief prohibiting Defendant from using the FRT Marks or any other mark confusingly similar to the FRT Marks.

113. Upon information and belief, Defendant has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT Marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

## COUNT VII — COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

114. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

115. As described above, Plaintiff RBTM owns and Plaintiff Rare Breed is the exclusive licensee of the distinctive FRT Marks in connection with firearm triggers through their continuous use of the marks since at least as early 2020, prior to any use of FRT by Defendant.

116. Plaintiffs' common law rights in the FRT Marks predate Defendant's infringing use of FRT and/or other confusingly similar marks comprised of or containing FRT.

64

117.    Defendant is using FRT as a source identifier in U.S. commerce in connection with the distribution, sale, offering for sale, and advertising of firearm triggers.

118.    Defendant's use of FRT was and is without Plaintiffs' consent. Such unauthorized use by Defendant is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendant's goods and services. As such, Defendant's acts constitute trademark infringement and unfair competition under common law.

119.    Defendant's unlawful acts, which were committed and continue to be committed with full knowledge of Plaintiffs' prior common law rights in the FRT Marks are knowing, willful, and done in bad faith.

120.    Defendant's acts have caused and, unless enjoined by this Court, will continue to cause great harm and irreparable injury to Plaintiffs for which it has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

121.    Plaintiffs are entitled to injunctive relief prohibiting Defendant from using FRT or any other mark confusingly similar to the FRT Marks.

122.    Upon information and belief, Defendant has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT mark, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant as follows:

a.    Each of the Asserted Patents has been and continues to be infringed by Defendant;

b.    Defendant's infringement of each of the Asserted Patents has been, and continues to be, willful;

c.    Each of the Asserted Patents is enforceable and not invalid;

d. That Defendant willfully infringed Plaintiffs' registered FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1114;

e. That Defendant committed willful acts of false designation of origin through its unauthorized use of the FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a);

f. That Defendant engaged in conduct constituting unfair competition under applicable law;

g. A preliminary injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from (1) infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case; (2) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (i) in association with firearm triggers or any related products, (ii) in any other manner that creates confusion or is likely to create confusion with Plaintiffs or Plaintiffs' FRT Marks, (iii) that in any way constitutes unfair competition with Plaintiffs; or (3) other such equitable relief as the Court determines is warranted;

h. A permanent injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from (1) infringement or contributing to the infringement of each of the Asserted Patents; (2) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (i) in association with firearm triggers or any related products, (ii) in any other manner that creates confusion or is likely to create confusion with Plaintiffs or Plaintiffs' FRT Marks, (iii) that in any way constitutes unfair competition with Plaintiffs; or (3) other such equitable relief as the Court determines is warranted;

66

i.      Consistent with the above, order Defendant to (1) remove from display any advertisements and marketing, promotional, or sales materials comprising, bearing, or displaying the FRT Marks or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term, including from all Internet webpages and social media accounts within Defendant's custody or control; and (2) deliver to the Court for destruction, or to show proof of destruction of, any and all physical advertisements and marketing, promotional materials, and sales materials comprising, bearing, or displaying the term "FRT" or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term;

j.      An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

k.      An award of all other damages permitted by 35 U.S.C. § 284 and 15 U.S.C. § 1117(a), including increased damages up to three times the amount of compensatory damages found;

l.      An award of all profits received by Defendant from sales and revenues of any kind made as a result of its trademark infringement and unfair competition;

m.      An award of all damages sustained by Plaintiffs as a result of Defendant's infringement and unfair competition, including ascertainable damages, the costs incurred by Plaintiffs for corrective advertising, the costs for this action, and Plaintiffs' reasonable attorneys' fees;

n.      A finding that this action is an exceptional case under 35 U.S.C. § 285 and 15

U.S.C. § 1117, and an award to Plaintiffs of their costs and attorneys' fees incurred in this action;

and

o.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves

to be entitled or which this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of

any issues so triable by right.

DATED: July 9, 2026                    Respectfully submitted,

*/s/ Glenn D. Bellamy*
Glenn D. Bellamy
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Matthew A. Colvin (Pro Hac Vice forthcoming)
Texas Bar No. 24087331
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

*Attorneys for Plaintiffs*
*ABC IP, LLC, and Rare Breed Triggers, Inc.*