Glenn D. Bellamy (Ohio Bar No. 0070321)
WOOD HERRON & EVANS LLP
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PHOENIX DIVISION**

| | | |
|---|---|---|
| **ABC IP, LLC, RARE BREED TRIGGERS, INC., and RBTM LLC,**<br><br>**Plaintiffs.**<br><br>**v.**<br><br>**Jeremy David Winland, d/b/a Arizona Regulator**<br><br>**Defendant.** | ) | CASE NO. 2:26-CV-04798<br><br>**PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE AND EXTENSION OF SERVICE DEADLINE** |

Plaintiffs ABC IP, LLC, Rare Breed Triggers, Inc and RBTM LLC ("Plaintiffs") respectfully request an order from this Court authorizing service of process on the Defendant, Jeremy David Winland d/b/a Arizona Regulator ("Defendant"), with the Summons, Complaint and Preliminary Order in this matter by alternative means as outlined herein. The current deadline for service is November 6, 2026, which was extended from October 7, 2026 (*see* Dkt. 14 and 15). Because the Defendant appears to be evading service, the Plaintiffs seek authorization to serve the Defendant by alternative means and for a further extension of time to five days after the Courts rules on this motion.

Good cause exists for this motion because, as described below, the Plaintiffs have been unable to serve process on the Defendant despite diligent efforts to do so. The Plaintiffs have attempted to serve the Defendant through a process server at last known addresses, through

waiver of service via USPS Priority Mail, and by engaging a private investigator. Plaintiffs also seek an extension of time in which to serve the Defendant for five days after the court has ruled on the present motion.

A proposed form of order is submitted herewith.

## BACKGROUND

### I. Nature of Action:

This action arises from the patent infringement lawsuit filed against the Defendant on July 9, 2026. This lawsuit asserts (i) direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247, 12,031,784, 12,578,159 and 12,636,403 (together, "the Asserted Patents"); and (ii) trademark infringement, false designation of origin, and unfair competition with regard to Plaintiffs' well-known FRT® trademark.

ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO"). In addition, RBTM is the owner of the trademark FRT® and variations thereof. Since at least 2020, the FRT® mark has been used by Plaintiff Rare Breed to identify a unique trigger for firearms, which has been a remarkably successful offering. As a result of the long-term and high-profile use, the FRT® trademark has come to be uniquely identified with Rare Breed and a valuable identifier of Rare Breed's products.

Rare Breed is the exclusive licensee of the Asserted Patents and the FRT marks. Plaintiffs have complied with the requirements of 35 U.S.C. §287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to make its product. Based on this, Plaintiffs have brought this action against the Defendant for committing

acts of direct, contributory, and induced patent infringement which are acts in violation of 35 U.S.C. §271.

This case is subject to a Conditional Transfer Order (CTO), consolidating it with related cases in an MDL titled *In Re: Rare Breed Triggers Patent Litigation*, MDL Case No. 3176, in the Eastern District of Texas. Defendant has opposed the CTO *pro se* [Ex. A], and the case remains with this court pending action by the MDL Panel, scheduled for consideration without hearing on December 3, 2026.

## **II.** **Timeline of Relevant Facts**:

As detailed below, the Plaintiffs have been unable to serve the Defendant by any means authorized in the Federal Rules of Civil Procedure, despite their diligent efforts to do so.

- On July 9, 2026, the Plaintiffs filed a lawsuit for patent and trademark infringement against the Defendant.
- On July 10, 2026, personal service of the initial documents was requested on the Defendant at a location on N. Shetland Drive, San Tan Valley, Arizona 85140 (the "Shetland Drive address"), which was believed to be the home residence of Defendant. The Shetland Drive address can also be found on the USPTO website in connection with the Defendant's trademark registration as of May 12, 2026. [Ex B].
- On July 12, 2026, a process server attempted service at this location, which was unsuccessful despite making contact with the current resident. [Ex. C].
- On July 25, 2026, Defendant contacted counsel via email instructing to use the "correct mailing address" and stated, "I await Service as I move about normal day to day life". [Ex. D].
    - The Defendant provided the address, P.O. Box 1630, Higley, Arizona 85236 ("Higley P.O. Box"). Plaintiffs were aware of this address prior to the Defendant

making contact; however, did not choose to serve at this location first as it is not a physical business or residential domicile.

- o Clearly, the Defendant had been made aware of the lawsuit and counsel's email address, as evidenced by his contact.

- On August 26, 2026, counsel mailed two copies of a waiver of service form with the summons, complaint, preliminary order, and magistrate consent form via USPS Priority Express to the Higley P.O. Box. [Ex. E]. Included in this package was also a return label at no cost to the Defendant, with tracking. The waiver form informed the Defendant: "A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure."

- On August 28, 2026, the USPS package was delivered to the Defendant's Higley P.O. Box. [See Ex. E].

- From August 29, 2026, to September 9, 2026, it was unclear if the Defendant had checked the P.O. Box as Counsel did not receive the return label or further communication from the Defendant.

- On September 10, 2026, the Defendant filed a Notice of Opposition in the Multi-District Litigation case (MDL No. 3176), admitting he did receive the summons, complaint, and waiver of service[1], but claiming it was not until September 9, 2026, which contradicts the USPS Tracking report. (Ex. E). In his *pro se* opposition to the CTO, and after providing only a P.O. Box address, he stated, "I am still awaiting proper walk up and hand me papers service." [*See* Ex. A].

[1] Defendant did not offer any good cause for failure to sign and return the waiver of service form.

- On September 25, 2026, Plaintiffs hired Phenix Investigations to locate and serve the Defendant.
- On September 28, 2026, a private investigator was assigned and began the investigation. [Ex. F].
- On October 6, 2026, the private investigator confirmed the Defendant had been located to be a residence on Chandler Blvd., in Chandler, Arizona; however, the residence is in a gated community. [Ex. G].
    - On the same day, a private process server started surveillance in hopes of witnessing the Defendant. With no success, the investigation and surveillance continued. *Id.*
- On October 23, 2026, the private investigator waited for the Defendant to exit the gated property. *Id.*
    - It was later found out that the Defendant has two additional vehicles. *Id.*
- On November 5, 2026, after an additional two hours of surveillance the private process server continued their attempts of service. *Id.*
- Yet, despite diligent surveillance and efforts, the private investigator has not successfully effected service. *Id.*

The Defendant appears already to be aware of and possesses a copy of the complaint but is taunting Plaintiffs' efforts and evading service of process.

## ARGUMENT

### I. Legal Standard

Federal Rule of Civil Procedure 4(e)(1) permits service on an individual within a judicial district of the United States by "following state law for serving a summons in an action brought in

courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Because this Court sits in Arizona and Defendant resides in Arizona, the Arizona Rules of Civil Procedure supply the governing standard. *See Mountains of Spices LLC v. Lafrenz*, No. CV-21-01497-PHX-JAT, Doc. 30 at 2–3 (D. Ariz. Feb. 17, 2022); *Anifer v. Clement Trucking LLC*, No. CV-23-00518-TUC-SHR (MSA), Doc. 11 at 1 (D. Ariz. Jan. 24, 2024).

Arizona Rule of Civil Procedure 4.1(k)(1) provides that "[i]f a party shows that the means of service provided in Rule 4.1(c) through Rule 4.1(j) are impracticable, the court may—on motion and without notice to the person to be served—order that service may be accomplished in another manner." Ariz. R. Civ. P. 4.1(k)(1). "Impracticable" does not mean impossible; it requires only a showing that service by the usual means would be "extremely difficult or inconvenient." *Blair v. Burgener*, 226 Ariz. 213, ¶¶ 17–18, 245 P.3d 898, 903–04 (Ct. App. 2010); *accord Bank of N.Y. Mellon v. Dodev*, 433 P.3d 549, 558 (Ariz. Ct. App. 2018). The showing is "something less than the 'due diligence' showing required before service by publication may be utilized," *Blair*, 226 Ariz. 213, ¶ 16, and it does not require a plaintiff to have attempted service under every method the rules provide. *See id.* ¶¶ 15–16 (adopting the impracticability standard applied in *Kelly v. Lewis*, 220 A.D.2d 485, 632 N.Y.S.2d 186 (App. Div. 1995)).

When the Court authorizes alternative service, the serving party "must make a reasonable effort to provide the person being served with actual notice of the action's commencement" and "must mail the summons, the pleading being served, and any court order authorizing an alternative means of service to the last-known business or residential address of the person being served." Ariz. R. Civ. P. 4.1(k)(2). Those two requirements protect the defendant's due process rights. *Blair*, 226 Ariz. 213, ¶ 20. The method chosen must also be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016–17 (9th Cir. 2002) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). The Constitution does not require any particular means of service, only one that meets that standard. *Id.* at 1017. Although *Rio Properties* arose under Rule 4(f)(3), courts in this District apply its due process analysis to motions for alternative service under Rule 4(e)(1) and Arizona Rule 4.1(k). *See Mountains of Spices*, Doc. 30 at 3–4; *Anifer*, Doc. 11 at 2.

## II. **<u>Personal Service Is Impracticable Because Defendant Is Evading It</u>**

Plaintiffs' efforts exceed what Rule 4.1(k) requires. In *Blair*, attempts at the defendants' business and residence on five different days, together with inquiries at the business on seven additional days, established that service by the usual means would be "extremely difficult or inconvenient." 226 Ariz. 213, ¶ 18. Here, Plaintiffs attempted personal service at the Shetland Drive address that Defendant listed with the USPTO as recently as May 2026, only to be informed by the current resident that Defendant no longer lives there. [Exs. B, C]. Plaintiffs then mailed a request for waiver of service, together with the summons, complaint, and a prepaid return label, to the P.O. Box that Defendant himself designated as his "correct mailing address." [Exs. D, E]. USPS records show delivery on August 28, 2026, and Defendant admits receiving the package, yet he never returned the waiver. [Exs. A, E]. Plaintiffs then retained a private investigator, who located Defendant's residence inside a gated community, began surveillance on October 12, 2026, identified Defendant's vehicles, and has attempted service since October 26, 2026, without success. [Exs. F, G (redacted for privacy)]. Although the private investigator expresses belief that he "should be able to find [the Defendant] given additional time," the Plaintiffs have already made extraordinary efforts.

The difficulty is of Defendant's own making. A defendant's evasion of service renders personal service impracticable. *See Anifer*, Doc. 11 at 2 (citing *Ritchie v. Salvatore Gatto Partners, L.P.*, 222 P.3d 920, 923 (Ariz. Ct. App. 2010)); *BMO Harris Bank, N.A. v. D.R.C. Invs., L.L.C.*, No. CV-13-1692-PHX-LOA, 2013 WL 4804482, at *4 (D. Ariz. Sept. 9, 2013). Defendant has known of this lawsuit since at least July 25, 2026, when he emailed Plaintiffs' counsel to announce that he would "await Service as I move about normal day to day life." [Ex. D]. After receiving the summons and complaint with the waiver package, he disregarded his duty under Federal Rule of Civil Procedure 4(d)(1) "to avoid unnecessary expenses of serving the summons" and instead told the Judicial Panel on Multidistrict Litigation, in his *pro se* opposition to the Conditional Transfer Order, that he is "still awaiting proper walk up and hand me papers service." [Ex. A]. All the while, he lives behind a gate that prevents the very "walk up" service he demands. A defendant who has the pleadings in hand, is litigating related issues before the MDL Panel, and virtually dares the plaintiff to catch him is evading service.

Courts in this District have found impracticability on comparable or lesser showings. *See Barber v. Lilly*, No. CV-13-1270-PHX-LOA, Doc. 10 at 2–3, 5–6 (D. Ariz. Oct. 1, 2013) (defendants looked through the peephole but would not open the door, and text messages confirmed they knew of the suit); *Mountains of Spices*, Doc. 30 at 1, 3–4 (defendant was aware of, and intentionally not engaging in, the lawsuit); *Anifer*, Doc. 11 at 2 (seven attempts at defendants' home, during one of which a defendant drove away upon seeing the process server); *Szabo v. Sw. Endocrinology Assocs. PLLC*, No. CV-20-01896-PHX-DWL, 2020 WL 7714569, at *1–2 (D. Ariz. Dec. 29, 2020) (multiple attempts at defendant's residence). Nothing in Federal Rule 4 or Arizona Rule 4.1 entitles a defendant to dictate the manner in which he will be served, and continued surveillance outside a gate would only add to the expense that Rule 4(d) is designed to avoid. *See*

*Barber*, Doc. 10 at 5–6 (futility of further attempts, which "continue to escalate the attorney's fees and costs of this action," supported alternative service). Service by the means provided in Rule 4.1(c) through (j) is impracticable.

## III. Service by Certified Mail and Email Is Reasonably Calculated to Give Defendant Actual Notice

Plaintiffs request leave to serve Defendant by (1) certified U.S. Mail, return receipt requested, addressed both to the Higley P.O. Box and to the residential address identified in the declaration of Plaintiffs' private investigator [Ex. G]; and (2) email to the business email address from which Defendant wrote to Plaintiffs' counsel on July 25, 2026 [Ex. D]. Each method is reasonably calculated to reach Defendant, and together they satisfy both Rule 4.1(k)(2) and due process.

### A. Certified Mail

Mail is a well-established and constitutionally adequate means of providing notice. *See Mullane*, 339 U.S. at 318–19; *Blair*, 226 Ariz. 213, ¶ 20 & n.6. Mailing to the Higley P.O. Box is particularly appropriate here. Defendant designated that box as his "correct mailing address" [Ex. D] and has admitted receiving Plaintiffs' waiver package there [Ex. A]. An address the defendant has directed the plaintiff to use is, by definition, reasonably calculated to reach him. *Cf. Rio Props.*, 284 F.3d at 1017–18 (the contact method the defendant "utilizes and prefers" was the method "most likely to reach" it). Because a P.O. Box may not qualify as a "business or residential address" under Rule 4.1(k)(2), Plaintiffs will also send the papers by certified mail to the residential address located by their investigator, independently satisfying the Rule's mailing requirement. *See Anifer*, Doc. 11 at 2–3 (authorizing certified mail to defendants' home and business addresses); *Barber*, Doc. 10 at 6 (authorizing certified mail, return receipt requested, to defendants' work and

residential addresses). Certified mail, return receipt requested, exceeds what due process requires, *see Blair*, 226 Ariz. 213, ¶ 20 n.7 (rejecting argument that service was deficient because it was not sent by certified mail), and will create a documentary record of delivery.

**B. Email**

Email service is likewise reasonably calculated to give Defendant notice. The Ninth Circuit has held that court-ordered email service comports with due process and that, where a defendant has chosen email as a means of communication, it may be "the method of service most likely to reach" him. *Rio Props.*, 284 F.3d at 1017–18. Arizona courts likewise recognize that "modern methods of communication, especially email," may be more likely to give a defendant notice than traditional alternatives such as publication. *Ruffino v. Lokosky*, 425 P.3d 1108, 1113 (Ariz. Ct. App. 2018). Courts in this District have authorized email service on evasive domestic defendants under Rule 4.1(k). *See Mountains of Spices*, Doc. 30 at 4–5; *Barber*, Doc. 10 at 6. There is no doubt that the address here is valid and monitored: Defendant used it to initiate contact with Plaintiffs' counsel about this very lawsuit. [Ex. D].

**C. Defendant Already Has Actual Notice**

The purpose of Rule 4.1(k)(2) and of the due process inquiry—ensuring that the defendant learns of the action and has an opportunity to respond—has already been served. Defendant has had the summons and complaint since August 28, 2026, according to USPS records, and since September 9, 2026 by his own account. [Exs. A, E]. He has corresponded with Plaintiffs' counsel and has appeared *pro se* before the MDL Panel to oppose transfer of this very case. [Exs. A, D]. The requested service will formalize notice that Defendant indisputably already has. As in *Rio Properties*, where the court confronted a defendant "playing hide-and-seek with the federal court,"

the requested methods are “reasonably calculated to apprise [Defendant] of the pendency of the lawsuit, and the Constitution requires nothing more.” 284 F.3d at 1018.

Plaintiffs therefore request that the Court authorize service of the Summons, Complaint, Preliminary Order, and the Court’s order granting this Motion by (1) certified U.S. Mail, return receipt requested, to the Higley P.O. Box and to Defendant’s residential address identified in Exhibit G; and (2) email to Defendant’s email address identified in Exhibit D; and that service be deemed complete upon Plaintiffs’ filing of a declaration attesting to the mailing and emailing. *See Barber*, Doc. 10 at 6 (ordering that the filing of evidence of mailing, faxing, and emailing “shall be deemed sufficient proof” of service).

## IV. Extension of time to Effect Service

Plaintiffs hereby request, for good cause shown, an extension of the deadline for serving the Defendant until five days after the Court rules on this motion for alternate service.

## CONCLUSION

For all these reasons, the Court should grant this Motion and enter an order extending the deadline to effect service for five days after the date of the order and authorizing alternative service of the summons, complaint, preliminary order, and the court order authorizing an alternative means of service by email and by certified mail, return receipt requested, to the Defendant’s known P.O. Box and identified residence address. A proposed form of order is submitted herewith.

DATED: November 6, 2026

Respectfully submitted,

*s/ Glenn D. Bellamy*
Glenn D. Bellamy
Wood Herron & Evans LLP
600 Vine Street, Suite 2800

Cincinnati, Ohio 45202
Tel: 513-707-0243
Email: gbellamy@whe-law.com

*of Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2026, I served a true and correct copy of the foregoing Plaintiff's Motion for Alternative Service and Extension of Service Deadline upon the Defendant by U.S.P.S. Priority Mail, to the address as follows:

Jeremy David Winland d/b/a Arizona Regulator

P.O. Box 1630
Higley, AZ 85236

s/ Glenn D. Bellamy
Glenn D. Bellamy